We'll call our next case Walker v. Bryan. Coffey, not Bryan. I'm sorry, Coffey. Walker v. Coffey. Mr. Johnson. May it please the court, my name is Jeffrey R. Johnson. I am counsel for the appellant, Cowley Walker. And I would like to reserve three minutes for rebuttal. Done. In this appeal, from the grant of a motion to dismiss on grounds of qualified immunity, I am asking the court to decide four issues in my favor. One, that the defendant's intentional use of an invalid, indeed an illegal, subpoena to obtain computer files from Walker's workplace violated Walker's Fourth Amendment rights because she had a reasonable expectation of privacy in her e-mails and her computer files stored on her work computer at Penn State University. Let me ask you a question. The award of qualified immunity, there's no question, I gather, that the subpoenas taken were improper and were not properly formatted to require the production of any evidence. There is no issue on this record that they're anything but improper. Is there any cases, and I didn't see it argued, but frankly I'm shocked that police officers would use an improper subpoena to try to get information. And can a government employee who uses improper means to achieve an end get qualified immunity in the first place because of this impropriety of their actions? Well, I say no, especially when it's a clearly established right that Ms. Walker had. But whether or not she has a right or not, the simple use of improper means by government employees, shouldn't that preclude them from getting qualified immunity? Yes. Well, you put your finger on something important when you talk about the right. We have to ask whether she had any expectation of privacy, right? Yes, you do, Your Honor. Okay. And on that, you've argued in your brief, forcefully, that this is all clearly established that there is a Fourth Amendment right. But isn't the record of cases out there a little less than clear on that when you're talking not about a third-party Internet service provider, but about an employee-employer relationship, an employer-provided email? No, Your Honor. I think that is the clearest instance where the right is clearly established. Really? I thought what was more clear was that when an employee is operating using an employer's platform, that typically the employee knows that an employer can look over their shoulder when they want to. How does that make it clear that there's an expectation of privacy in what's happening? I think Your Honor needs to distinguish between the line of cases where there is a law enforcement search, such as Mancusi v. DeForte, and the line of cases where there is a search by the employer, the O'Connor v. Ortega line of cases, where the special needs of the workplace take the place of— Doesn't the mere fact that the employer has the right to look at the employee's email mean there isn't an expectation of privacy? No. Why is that? Because the employer's special needs, as stated in O'Connor v. Ortega, and even picked up in Quan v. City of Ontario, the employer's special needs takes the place of the warrant requirement, and neither of those cases does anything to undermine the standard in Mancusi v. DeForte where the— Mancusi is a law enforcement case. It's a law enforcement case. Right. So your line of argument depends upon taking Mancusi and taking it a step away from Mancusi and saying that what applies to law enforcement also will imply in an employer-employee relationship. No. Because this is a law enforcement instigated search. I'm not asking about the facts of this specific case. I'm trying to ask you about the legal principle in the abstract. In the abstract, for the right to be clearly established, your argument has to be, and I take it it is, that what was true in Mancusi has to also be true in the employer-employee relationship. That is, those same things that underlie a warrant requirement bind an employer, and an employer has to do the sorts of things that a law enforcement outfit would have to do if it wants to look at its employees' emails. Is that right? No, that's not correct, Your Honor. Okay, then straighten me out, please. The line of cases, and I'll call it the O'Connor line of cases, I think it was a plurality opinion of four justices in O'Connor, cite the necessity, they recognize a reasonable expectation of privacy in employee files, but they recognize an exception to the Fourth Amendment requirement when an employer, for reasons central to the employment relationship, needs to look into files of the employee. Say they're misusing the computer system, they're using pornography on the computer system, they're hacking the computer system. Under those kinds of special needs circumstances, the employer has a right to do a search. And if there is a problem here, then Ms. Walker should have brought her suit against Pennsylvania State University rather than against the law enforcement. But this was not an employer search. This was a law enforcement search. Under Coolidge v. New Hampshire, where the law enforcement induces or coerces a search by an employer, the law enforcement is still liable for that search. Let me take it to another level. You start with the proposition on expectation of privacy, which I think is unarguable that a person has an expectation of privacy in the contents of telecommunications, e-mails in this case. Why is the university in the same position as any third-party holder of records? The case that you rely on is the Sixth Circuit case, Warshak, for an expectation of privacy even in third-party held e-mails. But Warshak itself says we recognize that we're in tension with the United States v. Miller, which may change. Riley suggests the Supreme Court might revisit it. But I don't see how you can say that the law is clearly established when even the post significant authority you rely on says we agree it really isn't. Judge Stearns, I think there has been a recognition of Warshak going back, I think Your Honor cited Warshak in United States v. D'Andrea back in 2007. But there's two aspects of this. There is Penn State as an employer, and you have to look at the role as an employer and the expectation of privacy as an employer. The second way of looking at it is Penn State as an ISP. And I think Your Honor's question is directed to the second way of looking at them, and on this motion to dismiss, we don't know at this point in time how this was treated. The subpoena went to an individual named John Coro, general counsel and security analyst at Penn State. We don't know what role, how Penn State looked at it. We don't know how the attorney general looked at it. We don't know how the search was conducted. The question, and I think all of these are factors, is that are those things relevant to the – did they prove your point or did they actually undermine your point by saying, look, the law here is unsettled. There are things that may make this completely legit for the employee, for the employer to hand stuff over to a third party, including law enforcement, and there are factors which might not make it appropriate. My position, Your Honor, is that under either analysis, that the content of these emails and documents was protected, that there was a reasonable expectation of privacy. And I think if you look at Cass, you look at Jacobson, I'll throw in Riley v. California, which even though it was not a third party case, it makes it so clear that computer files are protected. Even in an accidental search. Is Penn State really an ISP? We don't have a record on that. Let me shift gears since you're down to a couple minutes here and ask you, if I might, Mr. Johnson, about the Stored Communications Act. That was a separate claim, as I understand it, that was being made, right? Yes, Your Honor. What is it, can you describe for me, because I was having a little bit of a hard time figuring it out, what the district court's basis was for not allowing that to be repled? I had a little difficulty with it, Your Honor. What I believe they said was that Ms. Walker was not a customer of ISP and therefore did not qualify or have standing under the secured communications act. That's the one reference that's made by the appellees. Maybe I just didn't find it because I wasn't careful enough, but as I looked through the district court's reasoning, I didn't see anything other than that. Was there something else, some motion, some order or ruling? You have the whole record, Your Honor. One last point, what do you make of the Matlock argument that Pennsylvania State University is a sophisticated entity, whether the subpoena on its face was valid or not? They agreed to turn over the records. I would say, Your Honor, one record is incomplete on that. All we have is the statement, which is the complaint from Penn State, or excuse me, from the Attorney General's office about what Penn State knew or didn't know. We don't have a record on that. Again, it's premature to reach that conclusion. All right. Thanks very much, Mr. Johnson. Thank you, Your Honor. Mr. Knorr. Thank you, Your Honor. I'm John Knorr with the Pennsylvania Attorney General's office, and I represent the two appellees in this case. I'm sure we're going to get jumping right into Fourth Amendment stuff here in a minute, so before we go down that track, let me ask you to start, if I could, with what we ended with, Mr. Johnson, is the Stored Communications Act. Is there anything else in the way of reasoning, analysis, support, in the district court discussion about the Stored Communications Act, other than the statement that the act says customer, you're not a customer, period? Is there anything else?  That was our analysis. Yeah, and that was all, in your brief, in about two or three sentences, that's all the more time you gave to that, right? That's right. Okay. Let me ask another question, too, which I brought up before. You know, I'm shocked that these law enforcement officers used fake documents. They didn't try to get a search warrant with probable cause. They got a subpoenaed thesis taken that they simply had to sign and deliver. How can you ask for qualified immunity for state employees who use illegal means to get information? Well, let me take issue with your assertion that this is a fake document. The document was certainly incomplete, and it was certainly not a valid or enforceable subpoena. Right, and they knew it was not a valid and enforceable subpoena. But there is no allegation in the complaint that our agents misrepresented the status of this document to the lawyers for Penn State when they gave it, and there is no allegation that the lawyers for Penn State misunderstood the status of the document. They said, our people said to Penn State, do you have these e-mails? And Penn State said, yeah, but we need something formal like a subpoena. And they came back with this document, and Penn State said, sure, here's the e-mails. Yeah, you know, I still find that shocking that law enforcement officers would use that type of procedure to obtain information when they had been told that Penn State would not give it to them unless they had a proper legal request to get it. We don't know all that. None of that is in the record, Your Honor. Nor do I know any, I'm sorry. Well, when you say we don't know that, we do know what you just said, which is they said, give us something formal, right? Now, are we to understand that by give us something formal, Penn State University lawyers with a wink and a nod were saying, give us a document which is actually legally improper in this context? It could be that they just wanted the old quote, you know, something for the files. We don't know. What we do know is they were able to... Well, did they want something? We don't have to guess what they wanted. I guess to Judge Roth's point, no matter whether rights... Actually, let me ask it this way. Does it matter whether a right is clearly established or not? If what the law enforcement officials are accused of doing is coming forward with something they knew was not an appropriate legal mechanism. Well, it always matters whether the right is clearly established. Let me point out the Supreme Court has repeatedly, most recently I think in the Kwan case, has repeatedly rejected the idea that the mere fact that a search might be illegal under some other provision of law, whether it's a rule of criminal procedure or the Historic Communications Act, the mere fact that it may violate some other provision does not constitute a Fourth Amendment violation. Let me elaborate a little bit on that point. Go back 58 years to Elkins v. United States, which I don't think is altered over time, which basically says that violations of state law do not define Fourth Amendment rights. Evidence that could be gathered under federal law, even though gathered illegally under state law, is admissible without regard to the Fourth Amendment considerations. Could this evidence have been gathered illegally under federal law in the way in which the investigators sought to do it in this case? I have to say I have no idea, too, since I'm not a federal practitioner or a practitioner in any kind of criminal law, so I just don't know the answer to that question. What I can tell you is what we have here at most, according to my friend, is a violation of some Pennsylvania rule of criminal procedure. That's not a Fourth Amendment violation, and it certainly does not impact on the availability of qualified immunity to my clients. Well, sticking then on this point about qualified immunity and spinning out the idea that Judge Roth has described, is there a point, and maybe you've got some law to help us with this, is there a point at which law enforcement behavior is so egregious that regardless of whether rights are clearly established or not in terms of expectation of privacy, the behavior cannot be tolerated and therefore no qualified immunity? Is there a logical problem with that reasoning? I would say no. It seems to me that the action of a law enforcement officer either violates the Constitution or it doesn't, and it either violates a right that has been clearly established or it doesn't. Okay. Good enough. I understand your answer. My friend in the district court and I have come up with a single case, a single case holding that under circumstances like these, the Fourth Amendment has been violated. Not only is the point not established in her favor beyond debate, I think the existing case law indicates that there has been no Fourth Amendment violation here. Apply either the employer consent line of cases or the third-party doctrine line of cases. But employer consent, did the employer really consent when papers produced to the employer were not a proper subpoena? I will say again, recall under Rule 9, fraud has to be pledged with particularity. There is no allegation here, no allegation that the lawyers for Penn State looked at this document, which a first-year law student could look at and see it was incomplete, that they looked at that document and thought that it was something other than it was. What we do know is they turned over the emails. And there is no allegation in the complaint that that turning over was anything other than voluntary. What does it mean under Pennsylvania law for a judge to witness a subpoena? I know that's not a concept I'm familiar with, but that is in the pleading. I think it's a pretty pro forma procedure. I want to ask a little bit more about the Stored Communications Act. And candidly, I've just had a little trouble with this because it's not briefed by the parties extensively. And yet, I've wondered why the ruling to not permit amendment was not the subject of some more discussion or analysis. How are we to know that that was not something that could have been fleshed out? I mean, the mere statement that you're not a customer seems like a pretty, sort of an ipsy-dixit, sort of an assertion. And one without much in the way, or anything in the way of reasoning underlying it. And yet, it is the basis on which a decision is made about a very complicated, the application of a very complicated statute. How can that be right, Mr. Moore? I guess we in the district court could have all used more words, but the fact remains is that the relevant provision of the Communications Act only deals with disclosing the communications of customers. When you say we could have all used more words, I guess I would say we could have all used more analysis, right? That's what words do for us. They lay out an analytical path that people can follow on review. To say you are a customer is an assertion, not an argument. Well, I'm not sure how much more analysis you can give to the plain text of the statute, Judge Jordan, when it's clear that she was not a customer of Penn State. She wasn't an employee of Penn State. Why is it clear in the context of the Stored Communications Act that an employee is not standing in the shoes of a customer when the statute is drawn typically and framed typically towards ISPs that are third-party commercial providers? Why is it so obvious to you that it bears no further discussion than to say you're not a customer when the employee-employee relationship is the one in the mix and the employee stands in the shoes of a customer in terms of his or her relationship to the ISP provider who happens to be the employer? Well, that's kind of the point, isn't it, is that the Stored Communications Act, its entire structure, is geared toward commercial third-party providers of these services. Doesn't the law, I guess we wouldn't know because it's not briefed or discussed, but isn't there law that indicates that the Stored Communications Act does apply in the employer-employee relationship? It's not sealed off? Not to my knowledge. Okay. Well, I guess we could ask you to look at Fraser v. Nationwide, our own case, in which we dealt with the Stored Communications Act. Actually, it was the, I'm not sure it was the specific part of the Electronic Communication Privacy Act, which is called the Stored Communications Act, but we dealt with ECPA in the context of an employer-employee relationship and nobody said, and we certainly didn't say, it doesn't apply because there's an employer-employee relationship. That's my point is you say not to your knowledge. Well, if it's not dealt with by the district court, how are we to support the district court in saying, yes, clearly this would be futile. Clearly an effort to amend would be futile because you're a customer. All I can tell you is the act says customer and there's no, as far as I know, no special definition of the term customer that makes it a term of art other than its ordinary understanding. And in the ordinary way of speaking, nobody would say that Karen Walker was a customer of Penn State. In other words, what you're saying is that Penn State is not an ISP. Yes, that's another way of putting it. And therefore, actually Penn State is a third-party record holder at best or perhaps an employer making an accommodation. I would put it more in those terms. All right. We have not, I think, touched on the expectation of privacy issue. Of course, let me start by saying that this is an issue that is unsettled. It is certainly murky. I did not find any case that clearly goes one way or the other in these particular circumstances. What I did find was there are two ways of looking at this, and we don't know which way is the correct way because we only have the complaint. The usual way to retrieve e-mails is to go to the server and get the e-mails from the server. If that is what happened here, the server is under the control of Penn State. It wasn't under Ms. Walker's control. That's classic third-party situation where the information is under the control of a third-party, the third-party passes it on to law enforcement, and there is simply no expectation of privacy on the part of the original holder. I wanted to address, if you would, the assertion Mr. Johnson has made, which is the argument Mr. Johnson, your opponent, has made, that this was a law enforcement search that, in fact, Penn State was not consenting. This wasn't something Penn State did willingly. They did this at the instigation of and under a compulsion subpoena from law enforcement, so all the law associated with the Fourth Amendment and law enforcement should apply. Then we're back to the issue of fraud and consent. Again, there are no allegations in this complaint that Penn State's actions were anything but voluntary. When you say there's no indication of that, what is the indication of Penn State saying, we won't give it to you without some formal process? The only source for that was in a colloquy between my colleague, the trial attorney, and the district court at the oral argument on the motion to dismiss. Well, we know that they went to get the information and they were told something and they did not get the information then. They went back and created this unfinished subpoena and came back with it. So one would surmise that they were told something by Penn State, we aren't going to give it to you, just you coming and asking us verbally. We don't know exactly what transpired. But something transpired. And in the end, Penn State turned over the e-mails. They didn't say, remember this was given to their lawyers. Penn State is not an institution unfamiliar with the criminal procedure. They gave it to the lawyers. The lawyers didn't say. Maybe Penn State expects law enforcement when they produce documents to have them appropriately, properly created documents instead of improper. Whatever they may have expected, they got a subpoena which is in the record. It is clear what it is on its face. There is nothing in this record that says they misunderstood the purport of this document and they voluntarily turned over those documents. In other words, if Ms. Walker has a lawsuit, it's against Penn State. Ms. Walker may possibly have a legitimate complaint against Penn State, but even if Penn State acted improperly, that does not mean that our agents acted improperly. All right. It seems our time has expired. If there are no more questions. Thank you, Mr. Doar. We'll hear Mr. Johnson on rebuttal. Thank you, Your Honor. Just a couple of points to make on the issue of consent. Defendants asked. They were turned down, told no. We need something more formal, a subpoena. Mr. Noor says that's not in the pleading. It's not in the pleadings, but it is an admission by counsel for defendants at argument. And then it is in the second amended complaint, which Ms. Walker sought leave to file and was denied by Judge Caron. Can we look at that, or are we bound to look at the operative pleading? I think because one of the arguments that's before the court is that the district court owed in refusing reconsideration and leave to file a second amended complaint, that you're entitled to look at the complaint that sought to be filed. So I believe that is part of the record. And just in terms of consent, Penn State said no, get us something formal. And the defendants concoct this document, which has all the language about sanctions and you have to show up and you have to produce these documents. And Penn State then produces the document. Penn State did not instigate this search. It's not something that they had ready to turn over to the Attorney General's office. This was an Attorney General demand for these documents. Assume that that's true. Assume all that's true. You still have to deal with the issue of whether there is a right, don't you? Whether there is a clearly established right. So speak, if you would, to Mr. Knorr's argument in his briefing here today that it's not clearly established. It's not clearly established that in the employer-employee context, an employee is in a position to say, my information is mine and nobody else can look at it. Quan says, on the one hand, on the other hand, and I can quote you the language, right? It's talking about electronic communications. It says, on the one hand, they're so ubiquitous that it might strengthen the case for an expectation of privacy. On the other hand, the ubiquity of the devices made them generally affordable so one could counter employees who need cell phones or similar devices for personal matters, can purchase and pay for them on their own. In other words, it looks like the court is saying, you know, you can make arguments on both sides of this. Does that sound like a clearly established right or expectation of privacy? Quan was a 2010 case that was deciding the validity of an employer's search of an employee's text messages in 2002 or 2003. I forget the exact date. You take Quan where even in Quan they said, we're going to presume the employee had a reasonable expectation of privacy under these instances. However, in light of the employer's policies regarding computers and electronic devices, we're going to say that in line with O'Connor v. Ortega, that that reasonable expectation of privacy was overcome by the special needs of the workplace. That's not the situation here. And even with Quan where you're talking about that, remember in Riley v. California, the Supreme Court came down very clearly in favor of the protection of the kind of information on a smart phone. E-mails, photographs, documents, contacts, all of that was deemed to have a reasonable expectation of privacy. That's in April of 2014, approximately 18 months before. Not in the employer-employee context though, right? But you look at that in the employer-employee context, you take computer files and e-mail out and say, the Attorney General wanted to look at a file cabinet with a mail folder of Ms. Walker, and Penn State said no, and we came back with a phony subpoena. It's the same exact thing. Well, why didn't Riley suggest that the Supreme Court was ready to analogize cell phones to e-mails? They did say, well, cloud store data we might, in DICTA. No, Riley very clearly talked about smart phones and stored data on the smart phones, contacts. On the phone, but not, did they really talk about stored data in the hands of an employer? Well, I think you have to look at Riley in the context of Nancuzi v. DeForte. Why not look at it in terms of bank records cases like Miller? That's envelope information. That's an entirely different context. If you're looking at to, from, date, time, that's different than the content of the communication. That's why Katz and Jacobson and Riley are so significant in this analysis. What's embarrassing to say, but I have the companion case to Riley, which also got reversed, and I know, and I made the same mistake confusing the Miller doctrine before the Supreme Court came out, but if I can make that mistake, even though I'm not the world's greatest jurist, doesn't that suggest reasonable minds could disagree about whether the law in fact was settled? That's a tough question. Riley was April of 2014. The search was October of 2015. Okay. Reasonable minds could not differ. Thank you very much, Mr. Johnson. Thank you, Mr. Norrell. Thank you, Mr. Johnson. Take the matter under advisement.